UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

MAURIE LEMLEY,

        Plaintiff,

        V.

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

No. 2:13-CV-0299-JTR

ORDER GRANTING
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are Plaintiff Maurie Lemley's (Plaintiff's) Motions for Summary Judgment, ECF No. 33, 37, and the Commissioner of Social Security's (Defendant's) Cross-Motion for Summary Judgment, ECF No. 38. Plaintiff is unrepresented and is thus proceeding *pro se*; Special Assistant United States Attorney Jeffrey Eric Staples represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After considering the administrative record, briefs filed by the parties, and the oral argument provided on April 14, 2014, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motions for Summary Judgment.

## JURISDICTION

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income on June 2, 2010, alleging disability since April 1,

ORDER GRANTING DEFENDANT'S MOTION . . . . - 1

2010, due to hepatitis C with chronic muscle and joint pain; rheumatoid arthritis; gout; and depression.  Tr. 180.  The applications were denied initially and upon reconsideration.  Administrative Law Judge (ALJ) Caroline Siderius held a hearing on April 24, 2012, Tr. 26-63, and issued an unfavorable decision on June 11, 2012, Tr. 71-82.  The Appeals Council denied review on June 13, 2013.  Tr. 11-17.  The ALJ's June 2012 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on August 9, 2013.  ECF No. 2, 5.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was born on May 22, 1964, and was 45 years old on the alleged onset date, April 1, 2010.  Tr. 198.  He completed the 10th grade in school, received his GED and attended some college.  Tr. 364.  Plaintiff indicated he stopped working on December 28, 2009, because he was "fired for something [he] did not do."  Tr. 180.  However, he asserts his impairments did not prevent him from performing work until April 1, 2010.  Tr. 180.  Plaintiff testified at the administrative hearing that he is not able to work because he gets too tired and sore.  Tr. 33.  He stated if he tries to do physical tasks, like mow the lawn, he gets so tired he may end up sleeping for 20 hours.  Tr. 34.  He also indicated he has pain all over his body, including sharp pains in his joints.  Tr. 34.  Plaintiff testified he gets depressed because he can no long do the things he used to be able to do.  Tr. 52.  He stated he spends 18 hours a day lying down and is not able to do anything other than sleep for eight hours in a day.  Tr. 53-54.

Irvine S. Belzer, M.D., testified as a medical expert at the administrative hearing.  Dr. Belzer indicated Plaintiff has persistent hepatitis C, mild disc disease of the lumbar spine, a history of obstructive airways disease, and a history of gout.

ORDER GRANTING DEFENDANT'S MOTION . . . - 2

Tr. 36-37.  Dr. Belzer stated that the treatment for hepatitis C can be very debilitating, like chemotherapy, and the side effects can last for two to three months.  Tr. 38-39.  Given the recent liver function tests in the record, Dr. Belzer opined Plaintiff's most recent treatment for hepatitis C had not been successful.  Tr. 39.  Dr. Belzer testified there was no further treatment available to Plaintiff and the hepatitis C disease could be progressive.  Tr. 39.

### STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

ORDER GRANTING DEFENDANT'S MOTION . . . - 3

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Tackett*, 180 F.3d at 1098-1099.  This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant cannot do his past relevant work, the ALJ proceeds to step five and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which claimant can perform.  *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004).  If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made.  20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

## ADMINISTRATIVE DECISION

The ALJ found Plaintiff had not engaged in substantial gainful activity since April 1, 2010, the alleged onset date.  Tr. 73.  At step two, the ALJ determined Plaintiff had the following severe impairments:  hepatitis C, degenerative disc disease of the lumbar spine, obstructive airway disease and depression.  Tr. 73.  The ALJ specifically noted the medical record did not indicate a diagnosis of fibromyalgia; therefore, fibromyalgia had not been established as a medially determinable impairment.  Tr. 74-75.  At step three, the ALJ found Plaintiff's severe impairments did not meet or medically equal a listed impairment.  Tr. 75.

The ALJ assessed Plaintiff's RFC and determined Plaintiff could perform light exertion level work with the following limitations:  he can lift 25 pounds occasionally and 10 pounds frequently; he can stand/walk for up to four hours a day and sit for up to six hours a day; he is precluded from climbing

ropes/ladders/scaffolds but can occasionally climb stairs/ramps; he is able to occasionally reach overhead; he is able to perform one to three step tasks; he can have occasional contact with the public and coworkers; and he needs to avoid odors, gases, dust and fumes. Tr. 76-77. At step four, the ALJ determined Plaintiff was unable to perform his past relevant work as an injection mold machine tender, a molding machine supervisor and a hand packager. Tr. 80. At step five, the ALJ found that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert, Plaintiff was able to perform work existing in significant numbers in the national economy. Tr. 80-81. The ALJ thus determined that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from April 1, 2010, the alleged onset date, through the date of the ALJ's decision, June 11, 2012. Tr. 82.

## ISSUES

The question presented is whether substantial evidence exists to support the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff asserts multiple errors by the ALJ and the Social Security Administration. Tr. 33, 36, 37. He contends (1) a missing medical report from Dr. Thomas R. Hull should have been provided; (2) the ALJ erred at step two by not finding fibromyalgia and myofascial pain were severe impairments; (3) the ALJ failed to properly consider the statements of lay witnesses; (4) the physical RFC determination was improper; (5) the determination with respect to Plaintiff's credibility was flawed; and (6) the ALJ improperly relied on the medical opinions of Drs. Belzer, Scottolini, Weir and Awbery.

## DISCUSSION

### A.    Dr. Thomas R. Hull

Plaintiff repeatedly argues that the medical report of Dr. Thomas R. Hull is erroneously absent from the evidence of record. Plaintiff asserts "Social Security

ORDER GRANTING DEFENDANT'S MOTION . . . - 5

did not provide the medical report from Dr. Thomas R. Hull to the ALJ. Which made me look [untruthful] because I told the ALJ what he told me. But at that time I didn't know his name so I couldn't prove which doctor said it." ECF No. 33 at 2. On February 25, 2014, Defendant wrote to Plaintiff indicating information about Plaintiff's appointment with Dr. Hull had been discovered; however, pursuant to the Privacy Act, 5 U.S.C. § 552a, Defendant was unable to discuss the information with the Court without Plaintiff's consent. ECF No. 37 at 10.

Plaintiff was apparently provided a consent form by Defendant, but has not provided Defendant with his consent. Plaintiff has thus been given the opportunity to consent to disclosure regarding information pertaining to Dr. Hull, but has declined to do so. ECF No. 38 at 24. Consequently, Defendant is prohibited from discussing the information pursuant to the Privacy Act, 5 U.S.C. § 552a. ECF No. 38 at 24. In any event, Plaintiff has not specified what information would be gleaned from a report by Dr. Hull or how the report would otherwise provide support for Plaintiff's Motion for Summary Judgment. The Court finds any information pertaining to Dr. Hull has not been shown to be material to this case. Accordingly, Plaintiff's assertions with respect to a report by Dr. Hull are without merit.

**B.    Step Two Determination**

Plaintiff contends the ALJ erred by ignoring the diagnosis of fibromyalgia and dismissing Plaintiff's myofascial pain syndrome. ECF No. 37 at 2, 5.

The undersigned finds it important to note at the outset that Plaintiff's application for disability benefits alleges disability due to hepatitis C with chronic muscle and joint pain, rheumatoid arthritis, gout and depression. Tr. 180. Although fibromyalgia and myofascial pain syndrome were discussed at the administrative hearing, his application for disability does not allege fibromyalgia or myofascial pain syndrome significantly limited his physical or mental ability to work.

Plaintiff has the burden of proving he has a severe impairment at step two of the sequential evaluation process.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 423(d)(1)(A), 416.912.  In order to meet this burden, Plaintiff must furnish medical and other evidence that shows that he has a severe impairment.  20 C.F.R. § 416.912(a).  The regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c), provide that an impairment is severe if it significantly limits one's ability to perform basic work activities.  An impairment is considered non-severe if it "does not significantly limit your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1521, 416.921.

Step two is "a de minimis screening device [used] to dispose of groundless claims," *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when this conclusion is "clearly established by medical evidence."  S.S.R. 85-28; *Webb v. Barnhart*, 433 F.3d 683, 686-687 (9th Cir. 2005).  Applying the normal standard of review to the requirements of step two, the Court must determine whether the ALJ had substantial evidence to find the medical evidence clearly established Plaintiff did not have a medically severe impairment.  *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("[d]espite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."); *Webb*, 433 F.3d at 687.

### 1.    Fibromyalgia

The ALJ evaluated the evidence of record, considered the hearing testimony, and concluded Plaintiff did not have a severe, medically determinable impairment of fibromyalgia.  Tr. 74-75.

The ALJ noted that although reference was made to fibromyalgia in the record, the record did not reveal a diagnosis of fibromyalgia.  Tr. 74.  In fact, as indicated by the ALJ, Douglas Duncan, PA-C, stated "[r]eported diagnosis of

fibromyalgia not supported on exam," Tr. 74-75, 405, and the medical record indicated Plaintiff's tender point calculation was always either 1 or 0, Tr. 74, 382, 385, 405, 408.  In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment, the individual must be found not disabled at step two of the sequential evaluation process.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).   In this case, the medical evidence of record is devoid of medical signs or laboratory findings to substantiate the existence of fibromyalgia.  Accordingly, the ALJ reasonably concluded Plaintiff's alleged fibromyalgia was not a severe, medically determinable impairment.

### 2.    Myofascial Pain

The ALJ did not find myofascial pain syndrome to be a severe, medically determinable impairment in this case.  Tr. 74-75.

As with Plaintiff's alleged fibromyalgia, there is no definitive diagnosis of myofascial pain syndrome in the record.  Although Ethan Angell, M.D., noted myofascial pain syndrome in the "Assessment/Plan" portion of his March 28, 2012, medical report, Tr. 455, it is not apparent Dr. Angell intended to offer myofascial pain syndrome as a diagnosis and no other medical provider of record mentions myofascial pain syndrome.  In any event, medical expert Dr. Belzer testified that myofascial pain syndrome would refer to a complex symptomatology where people have pain in certain muscles groups, often associated with previous surgery or trauma, Tr. 44-45, and the ALJ's RFC determination accounts for Plaintiff's limitations as a result of pain by limiting him to a restricted range of light exertion level work, Tr. 76-77.

The ALJ did not err at step two of the sequential evaluation process by finding Plaintiff did not have severe impairments of fibromyalgia and myofascial pain syndrome.

///

## C.   Lay Witness Testimony

Plaintiff also complains that the ALJ discredited the testimony of his wife, Linda Lemley, and mother, Maureen Anderson.  Tr. 33 at 3, 37 at 2.

The ALJ shall "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987), *citing* 20 C.F.R. § 404.1513(e)(2).  The ALJ may not ignore or improperly reject the **probative** testimony of a lay witness without giving reasons that are germane to each witness.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) (emphasis added).

Plaintiff's attorney indicated at the administrative hearing that Plaintiff's wife was available to testify, but would merely testify about what Plaintiff had already said about his limitations and what Plaintiff had told her about his pain.  Tr. 60.  In a letter dated November 1, 2010, Mrs. Lemley wrote that Plaintiff had constant pain in his joints and muscles and experienced extreme exhaustion.  Tr. 196.  The information in this November 2010 letter parallels Plaintiff's testimony.

The ALJ indicated at the administrative hearing that if Mrs. Lemley was just going to reiterate what Plaintiff had said, her testimony would not be useful.  Tr. 60.  At that point, the ALJ asked Plaintiff if he had anything to add.  Tr. 60.  Plaintiff did not, at that time, state concern that the ALJ chose to not solicit testimony from Mrs. Lemley.  Tr. 61.

Ms. Anderson provided a letter on Plaintiff's behalf on November 2, 2010.  Tr. 195.  She stated Plaintiff "has been in extreme pain and fatigued to the point of being unable to do things he would normally do, such as work, keep his home in shape and doing activities with friends and family."  Tr. 195.  Again, this letter merely echoes Plaintiff's testimony of fatigue and pain.

The ALJ considered the written statements of Mrs. Lemley and Ms. Anderson and gave them little weight because "these individuals [would not] know if the claimant is in pain or how long he is in pain.  Their statements simply reflect

ORDER GRANTING DEFENDANT'S MOTION . . . - 9

what the claimant told them." Tr. 80.  Because the statements did not expound upon Plaintiff's testimony, the lay witness statements contained little probative value.  Accordingly, the ALJ did not err by giving little weight to the statements of the lay witnesses in this case.  Tr. 80.

**D.    Physical RFC Determination**

Plaintiff contends the ALJ erred with respect to the physical RFC determination in this case.  Plaintiff specifically asserts the ALJ erred by according weight to the opinions of Dr. Belzer, Dr. Scottolini, Dr. Weir and Dr. Awbery.  ECF No. 33 at 3, 37 at 6-7.

The ALJ noted that an August 24, 2010, examination by A. Peter Weir, M.D., found that Plaintiff had no muscle weakness or atrophy and no areas of decreased sensation.  Tr. 78, 367.  The ALJ noted Plaintiff "was observed ambulating at a brisk pace without difficulty or apparent discomfort" both before and after the examination.  Tr. 78, 367.  Dr. Weir opined Plaintiff had "no functional limitations."  Tr. 367.

On September 14, 2010, Kaylee Awbery filled out a physical residual functional capacity assessment form which opined Plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk and sit about six hours in an eight-hour workday and had an unlimited ability to push and/or pull.  Tr. 369.  On February 8, 2011, Alfred Scottolini, M.D., affirmed the September 2010 physical assessment finding it was "substantially and technically correct."  Tr. 400.  The ALJ, however, accorded the opinion of Dr. Scottolini only "some weight," noting that greater restrictions in accord with the ALJ's RFC determination, Tr. 76-77, reflected a more accurate assessment of Plaintiff's physical RFC, Tr. 79.

Plaintiff was treated by Ethan M. Angell, M.D., during the course of his treatment for hepatitis C in 2011-2012.  Tr. 415-455.  On January 18, 2011, Dr. Angell reported Plaintiff's musculature was normal with no joint deformities or

ORDER GRANTING DEFENDANT'S MOTION . . . - 10

abnormalities, and he had normal range of motion for his age for all extremities. Tr. 78, 390-393.  Dr. Angell reported Plaintiff tolerated the treatment for hepatitis C well throughout the majority of the time under his care.  Tr. 78, 415-455.  While Plaintiff's complaints of pain and fatigue are noted in Dr. Angell's 2012 reports, Tr. 445-455, Dr. Angell never identified any functional limitations or assessed Plaintiff's physical capacity.

Dr. Belzer testified at the administrative hearing on April 24, 2012, that Plaintiff had persistent hepatitis C, mild disc disease of the lumbar spine, a history of obstructive airways disease, and a history of gout, Tr. 36-37, but concluded that Plaintiff's impairments did not meet or equal a listings impairment.  Tr. 79.  Dr. Belzer stated the medical evidence indicated Plaintiff had the ability to lift and/or carry 20 to 25 pounds on an occasional basis.  Tr. 42-43, 46, 79.

The ALJ determined Plaintiff was limited to a restricted range of light exertion level work.  Tr. 76-77.  Light level work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds.  20 C.F.R. §§ 404.1567(b), 416.967(b).  No medical professional of record, including those referenced above, has opined that Plaintiff has greater restrictions than those assessed by the ALJ in this case.  Since the ALJ's physical RFC determination is consistent with or more restrictive than the limitations assessed by all other medical professionals of record, the ALJ's assessment of Plaintiff's physical functioning ability is supported by substantial record evidence and free of error.

**E.    Plaintiff's Credibility**

Plaintiff appears to also contest the ALJ's determination that he lacked credibility.  ECF No. 33 at 3, 37 at 3, 5-6.

It is the province of the ALJ to make credibility determinations.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231

ORDER GRANTING DEFENDANT'S MOTION . . . - 11

(9th Cir. 1990).  Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the ALJ did not find all of Plaintiff's alleged symptoms to be credible.  Tr. 78.  The ALJ concluded Plaintiff's allegations and testimony concerning his subjective complaints and limitations were not convincing.  Tr. 79.

The ALJ first indicated the medical evidence of record did not support the level of limitation alleged by Plaintiff.  Tr. 78.  A lack of supporting objective medical evidence is a factor which may be considered in evaluating a claimant's credibility, provided it is not the sole factor.  *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991).  The ALJ noted that, with regard to Plaintiff's physical complaints, Dr. Weir found in August 2010 that Plaintiff had no muscle weakness or atrophy and no areas of decreased sensation.  Tr. 78, 367.  The ALJ noted Plaintiff "was observed ambulating at a brisk pace without difficulty or apparent discomfort" both before and after the examination with Dr. Weir.  Tr. 78, 367.  Dr. Angell reported on January 18, 2011, that Plaintiff's musculature was normal with no joint deformities or abnormalities, and he had normal range of motion for his age for all extremities.  Tr. 78, 390-393.  With regard to Plaintiff's mental impairment allegations, Samantha Chandler, Psy.D., reported following a July 9, 2010, psychological evaluation that a host of findings were normal and Plaintiff

ORDER GRANTING DEFENDANT'S MOTION . . . - 12

was able to interact appropriately with a supervisor, coworkers and the public, although depression could cause an adverse effect.  Tr. 78, 340-344.  Dr. Chandler found Plaintiff's memory, concentration, ability to follow short and simple instructions, abstract reasoning, and executive functioning were all within normal limits and his judgment and insight were good.  *Id*.  On January 18, 2011, Dr. Angell reported Plaintiff had no unusual anxiety or evidence of depression.  Tr. 78, 392.  It was thus appropriate for the ALJ to conclude the objective medical evidence did not support Plaintiff's allegations of disabling physical and mental limitations.

The ALJ also indicated the record suggested Plaintiff had engaged in drug-seeking behavior.  Tr. 78.  An ALJ may properly consider evidence of a claimant's drug use and drug-seeking behavior in assessing credibility.  *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).  The ALJ indicated a May 10, 2010, doctor note from Michael J. Metcalf, M.D., reported Plaintiff requested narcotics the day after he had been given 30 pain pills.  Tr. 78, 315.  Plaintiff explained at oral argument on April 14, 2014, that he was not attempting to get more pills the day he called Dr. Metcalf, but had merely called to inquire about the medication.  Plaintiff indicated he did not know Dr. Metcalf had already written a prescription the day before.  This explanation, however, was never presented to the ALJ.  In any event, as stated by the ALJ, Plaintiff also had a loud disagreement with the doctor over narcotic medication within a month, stating he did not feel he was receiving appropriate care, Tr. 78, 308, and other evidence showed doctors referred to Plaintiff taking Vicodin chronically and had encouraged him to taper off this opioid medication as it was not indicated, Tr. 78, 387, 409.

Lastly, the ALJ noted inconsistencies in Plaintiff's complaints.  Tr. 78.  Inconsistencies in a disability claimant's testimony support a decision by the ALJ that a claimant lacks credibility with respect to her claim of disabling pain.  *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986).  The ALJ noted Plaintiff informed

Dr. Chandler he only used the computer a few minutes a day, two or three days a month, due to pain, Tr. 343, but reported on January 18, 2011, that he was on the computer for four to eight hours a day, Tr. 387. Tr. 79. The ALJ also noted Plaintiff's statement to health care providers that he had no history of depression, Tr. 390, conflicts with his current complaint of depression, and his admitted use of the computer for four to eight hours a day conflicted with his allegation that all he does is sleep. Tr. 79. The ALJ additionally found Plaintiff's "act of continuing to use tobacco suggests that his breathing problem was less troublesome than he indicated." Tr. 78-79. The ALJ appropriately considered inconsistencies in Plaintiff's complaints to discount his allegations of symptoms.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g). After reviewing the record, the undersigned finds the reasons provided by the ALJ for discounting Plaintiff's subjective complaints are clear, convincing, and fully supported by the record. Accordingly, the ALJ did not err by concluding Plaintiff's subjective complaints regarding the extent of his symptoms and limitations were not fully credible in this case.

**F.    Additional Evidence Submitted to the Court**

Plaintiff's second Motion for Summary Judgment attaches new evidence that is not part of the administrative record and was provided for the first time to this Court.

The Court is required to remand a matter for additional proceedings pursuant to sentence six of 42 U.S.C. § 405(g) if Plaintiff demonstrates new evidence "is

material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991); *Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984). Evidence is material if it bears "directly and substantially on the matter in dispute" and there is a "reasonable possibility" it would have changed the outcome of the administrative decision. *Mayes v. Massanari*, 276 F.3d 453, 462 (2001); *Booz v. Secretary of Health and Human Serv.*, 734 F.2d 1378, 1381 (9th Cir. 1984).

The new evidence submitted by Plaintiff is a treatment note and report from Dr. Angell, dated February 25, 2014. ECF No. 37. The materials were generated a year and a half after the ALJ's decision and do not identify any new functional limitations or restrictions. Therefore, even if Plaintiff could show good cause for submitting these records more than a year after the ALJ's decision, the evidence is not sufficiently material to compel a remand to the ALJ. Since Plaintiff has failed to meet the "materiality" requirement, the Court declines to remand the case for consideration of this new evidence.

If Plaintiff's condition has worsened since the ALJ issued her decision on June 11, 2012, or new impairments have developed, the appropriate remedy is to file a new application for disability benefits. *Osenbrok v. Apfel*, 240 F.3d 1157, 1164 n.1 (9th Cir. 2001). If Plaintiff is now able to prove a disabling physical or mental impairment, he would be entitled to benefits as of the date of the new application. *Sanchez v. Secretary of HHS*, 812 F.2d 509, 512 (9th Cir. 1987).

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and is not based on legal error. Accordingly,

///

///

**IT IS ORDERED:**

1.      Defendant's Motion for Summary Judgment, **ECF No. 38**, is **GRANTED**.

2.      Plaintiff's Motions for Summary Judgment, **ECF No. 33, 37**, are **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to *pro se* Plaintiff and counsel for Defendant.  Judgment shall be entered for **DEFENDANT** and the file shall be **CLOSED**.

DATED April 15, 2014.



_____
                JOHN T. RODGERS
        UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 16